# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DONNELL DEVON SMITH,        )
                                )
        Petitioner,[1]        )
                                )
v.                             )        Case No. CIV-12-754-R
                                )
ROBERT PATTON,           )
                                )
        Respondent.       )

## REPORT AND RECOMMENDATION

Petitioner Donnell Devon Smith, an Oklahoma state prisoner appearing pro se, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1, "Petition"), along with a brief in support (Doc. No. 3). Respondent Robert Patton, Director of the Oklahoma Department of Corrections, filed a Response to the Petition (Doc. No. 18), including exhibits (Doc. Nos. 18-1 through 18-21) and conventionally filed state-court records (Doc. Nos. 20, 23). United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). As detailed below, the undersigned recommends that the claim raised in Ground Five of the Petition be dismissed for lack of subject-matter jurisdiction and that Petitioner's remaining claims be denied.

---

[1] In his Petition, Petitioner spells his first name as "Donell"; however, in the state court proceedings and conviction at issue, Petitioner's name was spelled "Donnell." *See, e.g.*, Pet., Doc. No. 1, at 1, 8. In this Report and Recommendation, the undersigned adheres to the latter spelling because that was the name under which Petitioner was convicted.

BACKGROUND

*A. State-Court Proceedings*

On October 19, 2010, Petitioner entered guilty pleas to 26 felony counts pending against him in 12 cases in the District Court of Comanche County, Oklahoma. Pet., Doc. No. 1, at 1, 7-8; Pet'r's Br., Doc. No. 3, at 2-4, 7-8.[2] Petitioner was then convicted and sentenced to a mix of concurrent and consecutive sentences, including six concurrent life sentences to be followed consecutively by concurrent sentences for various terms of years. *See* Pet. at 1; Pet'r's Br. at 2-5, 7-8. At the plea and sentencing hearing, Petitioner was represented by the privately retained attorney who had represented Petitioner in the negotiation of a plea agreement with the State. *See* Pet'r's Br. at 6, 7-8, 45.

On October 29, 2010, the Comanche County District Court construed a letter submitted by Petitioner as a motion to withdraw his guilty pleas based upon Petitioner's dissatisfaction with his plea counsel's performance. *See* Pet'r's Mot. to Withdraw Guilty Plea, Doc. No. 18-4; Pet'r's Br. at 8-9. On November 8, 2010, the court held an evidentiary hearing at which Petitioner, then represented by court-appointed counsel Don Gutteridge, testified. Plea Withdrawal Hr'g Tr., Doc. No. 18-5; Pet'r's Br. at 9. The court granted Petitioner a continuance of the hearing to allow Petitioner to collect evidence that he alleged would support his request to withdraw his guilty pleas. *See* Plea Withdrawal Hr'g Tr. at 35. On November 30, 2010, when the evidentiary hearing

_____

[2] Citations to documents filed electronically with this Court use the page numbers assigned by the Court's electronic filing system. When quoting documents filed by Petitioner, the undersigned has altered the capitalization to improve readability.

2

resumed, Petitioner was again represented by Mr. Gutteridge, but he did not present any evidence or call any witnesses. *See id.* at 36-37. At the conclusion of the hearing, the court denied Petitioner's motion to withdraw his guilty pleas. *Id.* at 37-39; *see also* Order Denying Pet'r's Mot. to Withdraw Pleas, Doc. No. 18-6.

Through appointed counsel Virginia Sanders, Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), asserting nine grounds of error:

(1) The 10-year sentence for attempted second-degree robbery (count 1) in Case No. CF-09-505 was void on its face;

(2) Petitioner's guilty pleas as to attempted second-degree robbery (count 1) in Case No. CF-09-505, attempted rape (count 3) in Case No. CF-09-530, and forcible sodomy (count 3) in Case No. CF-09-531 "were not entered knowingly and voluntarily because Petitioner was misadvised of the punishment ranges" as to those crimes;

(3) The convictions in Case No. CF-09-531 for indecent exposure (count 2) and forcible sodomy (count 3) violated "the prohibitions against double punishment and double jeopardy";

(4) Insufficient factual bases in support of Petitioner's guilty pleas and convictions in Case Nos. CF-09-534 and CF-09-535 were presented to the trial court, and, alternatively, double jeopardy barred Petitioner's convictions in those cases;

(5) The Judgment and Sentence in Case No. CF-09-533 does not reflect the oral pronouncement of that sentence;

(6) "Petitioner's statutory and constitutional rights to preliminary hearings and timely post-competency hearings were violated in [Case Nos.] CF-09-530, CF-09-534, CF-09-535, and CF-09-536";

(7) Petitioner's guilty pleas "were entered without sufficient deliberation and were not knowingly and voluntarily entered" as a "result of Petitioner's confusion and misunderstanding as to the potential punishment in some of the[] charges, his failure to fully grasp the consequences of his pleas, and his frustration because of threats and coercion from his own attorney";

(8) "Under the facts and circumstances and the entire situation surrounding the pleas, Petitioner received excessive sentences in these cases"; and

(9) "The cumulative effect of all these errors deprived petitioner of a fair and impartial proceeding."

Pet'r's Br. at 2-4, 9-48; *see also* Pet. at 2, 8; Pet'r's OCCA Br., Doc. No. 18-1.

On October 6, 2011, the OCCA: (1) affirmed the order denying Petitioner's motion to withdraw his pleas; (2) modified Petitioner's sentence as to count 1 in Case No. CF-09-505 from ten years' to five years' imprisonment; (3) remanded Case No. CF-09-533 to the district court "for an Order *Nunc Pro Tunc* reflecting that the sentence is to run concurrent[ly] with the sentences in [Case Nos.] CF-2009-501, 502, 503, 504, and 534"; and (4) denied all other requested relief.  OCCA Summ. Op. Denying Cert., Doc. No. 18-2 at 15.  Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.  *See* Pet. at 2.

### B. Federal Habeas Petition Under 28 U.S.C. § 2254

On July 2, 2012, Petitioner filed his Petition Under 28 U.S.C. § 2254 in this Court, raising the same nine grounds of error presented to the OCCA and listed above.  *See* Pet. at 4-8.  In support of his Petition, Petitioner filed a copy of the brief that was prepared and submitted by his state appellate counsel to the OCCA.  *Compare* Pet'r's Br., *with* Pet'r's OCCA Br.  Petitioner does not directly identify or challenge any specific error in the OCCA's decision.  *See* Pet. at 4-8.

Respondent concedes that the Petition is timely and that the grounds raised in the Petition have been exhausted in state court.  Resp't's Resp., Doc. No. 18, at 2.

## ANALYSIS

Under 28 U.S.C. § 2254, a federal court's review of a state court's judgment is limited.  A state court's factual findings are presumptively correct and may be rebutted

only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). As to a state court's legal determinations:

> [A federal court] must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," [a federal court] may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

> Under the "contrary to" clause of § 2254(d)(1), [a federal court] may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, [a federal court] may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted). Thus, to succeed on a habeas petition under § 2254(d), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Although the Court construes pro se pleadings liberally, the Court cannot act as Petitioner's advocate by formulating arguments on Petitioner's behalf. *See, e.g.*, *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Thus, as an initial matter, Petitioner's failure to challenge any aspect of the OCCA's October 6, 2011 decision in his Petition significantly limits Petitioner's ability to meet his burden of "showing there was no reasonable basis for the state court to deny relief," as required under the standard detailed above. *See Richter*, 562 U.S. at 98; *see also id.* at 102-03 (emphasizing limited nature of federal court's review of state court's decisions under § 2254(d) and petitioner's burden of establishing requisite error in state court's decision to obtain relief under § 2254(d)).

Further, because the Petition's exact federal claims have "been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim[s] on the merits in the absence of any indication or state-law procedural principles to the contrary." *See id.* at 99. Although this presumption may be overcome, Petitioner has not attempted to do so, and there is no indication from the OCCA's October 6, 2011 decision that the claims disposed of therein were not adjudicated on the merits. *See* OCCA Summ. Op. Denying Cert. The undersigned has considered each of Petitioner's claims individually and finds that each was adjudicated on the merits. *See Richter*, 562 U.S. at 99-100; OCCA Summ. Op. Denying Cert. at 1-15.

A. *The OCCA's Standards of Review*

With the exception of the claims in Ground Seven, the OCCA reviewed Petitioner's appellate claims only for plain error because Petitioner did not raise those

arguments to the trial court when moving to withdraw his guilty pleas. *See* OCCA

Summ. Op. Denying Cert. at 6-7.

> To be entitled to relief under the plain error doctrine, Petitioner must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. If these elements are met, this Court will correct plain error only if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice.

*Id.* at 7 (alteration, citation, and internal quotation marks omitted) (citing Okla. Stat. tit.

20, § 3001.1; *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006); *Simpson v.

State*, 876 P.2d 690, 694-95, 698 (Okla. Crim. App. 1994)).

The above plain error analysis "is rooted in due process" and holds "no practical

distinction" from "the federal due-process test, which requires reversal when error 'so

infused the trial with unfairness as to deny due process of law.'" *Thornburg v. Mullin*,

422 F.3d 1113, 1125 (10th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 75

(1991)). "Because the OCCA applied the same test [that federal courts] apply to

determine whether there has been a due-process violation, [a federal court] must defer to

its ruling unless it 'unreasonably appli[ed]' that test." *Id.* (third alteration in original)

(quoting 28 U.S.C. § 2254(d)(1)); *see also Hancock v. Trammell*, __ F.3d __, No. 12-

6255, 2015 WL 4910981, at *7, *9-10 (10th Cir. Aug. 18, 2015) (discussing Oklahoma

plain error standard).

*B. Federal Review of the OCCA's Decision*

    1. <u>Ground One</u>

In Ground One, Petitioner contends that he should have been allowed to withdraw his guilty plea in Case No. CF-09-505 as to count 1 (attempted second-degree robbery) because the 10-year sentence initially imposed exceeds the statutory maximum for that crime and is, thus, void on its face. *See* Pet. at 4; Pet'r's Br. at 9-11. In support, Petitioner asserts that the sentencing court cannot impose a sentence that exceeds the statutory maximum, which for attempted second-degree robbery is five years' imprisonment, calculated by halving the 10-year maximum sentence for the completed crime of second-degree robbery. Pet'r's Br. at 9-11 (citing Okla. Stat. tit. 21, §§ 42(2), 799).

In reviewing this claim for plain error, the OCCA agreed that the challenged sentence was "five years greater than the maximum allowed by statute and therefore void on its face." *See* OCCA Summ. Op. Denying Cert. at 7. The OCCA noted that, among other options, state law permits it to modify such an infirm sentence to within the statutory range. *Id.* at 8; *see also* Okla. Stat. tit. 22, § 1066 (permitting OCCA to "reverse, affirm or modify the judgment or sentence appealed from"). The OCCA then modified Petitioner's sentence "to the actual statutory maximum of five years" because "Petitioner was sentenced to ten years['] imprisonment when the parties believed that was the statutory maximum." OCCA Summ. Op. Denying Cert. at 8.

Generally, sentencing decisions fall within the ambit of state law and are not subject to a constitutional challenge in federal court unless the petitioner shows that the

sentence exceeds statutory limits, is otherwise unauthorized under law, or is grossly disproportionate to the crime's severity. *Ewing v. California,* 538 U.S. 11, 21 (2003); *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Here, agreeing with Petitioner's assertion that five years' imprisonment was the statutory maximum sentence, the OCCA modified the sentence to be within that limit. In his Petition before this Court, Petitioner does not address the OCCA's disposition or advance any argument that the sentence, as modified, is subject to constitutional challenge. Petitioner therefore has not shown that federal habeas relief is warranted based upon the OCCA's imposition of a five-year sentence.

Petitioner also does not expressly challenge the OCCA's decision to *modify* his sentence rather than to grant his requested relief of permission to withdraw his guilty plea. To the extent that such a challenge is presented, Petitioner cites no Supreme Court holding or other authority that would require such relief in the above circumstances; nor is the undersigned aware of any such authority. The OCCA's exercise of its authority and discretion under state law to modify Petitioner's sentence supports no viable claim of a due process violation in and of itself. *Cf. Carbray v. Champion*, 905 F.2d 314, 317-18 (10th Cir. 1990) ("[T]he Supreme Court has now made it clear that if a state appellate court has authority to exercise its own discretion and to modify a jury sentence on appeal as a matter of state law, no due process violation occurs." (citing *Clemons v. Mississippi*, 494 U.S. 738, 747 (1990))); *Ciancio v. Patton*, No. 15-7016, 2015 WL 3757398, at *2 (10th Cir. June 17, 2015).

In sum, Petitioner does not show that the OCCA's finding and correction of plain error were contrary to or an unreasonable application of clearly established federal due process law as set forth in Supreme Court precedent. Thus, Petitioner is not entitled to federal habeas relief on Ground One. *See* 28 U.S.C. § 2254(d)(1).

2. Ground Two

In Ground Two, Petitioner alleges that his guilty pleas were not knowing and voluntary as to three counts because he received inaccurate information regarding punishment ranges for those crimes. Pet. at 4; Pet'r's Br. at 12-17. Petitioner contends that a due process violation occurs when a criminal defendant pleads guilty without "full advice of the consequences of the plea, including the correct sentencing range." Pet'r's Br. at 12-13. Specifically:

- Petitioner contends that he was incorrectly informed that the punishment range for attempted second-degree robbery (Case No. CF-09-505, count 1) was up to ten years' imprisonment, when the maximum penalty was actually five years' imprisonment. Pet'r's Br. at 13-14. Petitioner agreed to plead guilty in exchange for, and later was sentenced to, ten years' imprisonment, the maximum he believed to apply. *See* Pet'r's Br. at 13-14. As discussed above, the OCCA has modified that sentence to the actual maximum of five years' imprisonment.

- Petitioner similarly contends that he was incorrectly informed that the punishment range for attempted first-degree rape (Case No. CF-09-530, count 3) was imprisonment for five years to life, when the actual maximum was 22.5 years' imprisonment (half of a life sentence as calculated for parole eligibility purposes). *See* Pet'r's Br. at 14-15 (citing Okla Stat. tit. 21, §§ 42(1), 1115; *Roy v. State*, 152 P.3d 217 (Okla. Crim. App. 2006)). Petitioner asserts that "because he believed he was facing [five years] to life in prison," he "agreed to and was sentenced to prison for twenty years." *See* Pet'r's Br. at 15. Without elaboration as to what he understood or how other information would have changed his decision to plead guilty, Petitioner further asserts that "[t]his misunderstanding about the punishment was critical to the voluntariness of [Petitioner's] guilty plea." *Id.*

- Petitioner also contends that he received conflicting information as to the minimum punishment for forcible sodomy (Case No. CF-09-531, count 3), which carried a punishment range of zero to 20 years' imprisonment. Pet'r's Br. at 15 (citing Okla. Stat. tit. 21, § 888). Petitioner alleges: "[T]he written Plea of Guilty/Summary of Facts [stated] that the range of punishment for forcible sodomy was 5 to 20 years instead of zero to 20 years in prison. Petitioner was then told by the judge that forcible sodomy carried up to 20 years." Pet'r's Br. at 15 (emphasis and citation omitted); *see also* Pet. at 4; Plea of Guilty, No. CF-09-531, Doc. No. 18-16, at 3; Plea & Sent'g Hr'g Tr., Doc. No. 18-3, at 11. Petitioner asserts that because "[t]he paperwork contradicted the oral explanation" it was "impossible for Petitioner to know what punishment he was actually facing for the charge of forcible sodomy." Pet'r's Br. at 15. *But see* Pet'r's Br. at 38-39 (suggesting that Petitioner did not review the plea-related documents before entering his guilty pleas). Petitioner "ultimately agreed to and was sentenced to the maximum punishment of twenty years in prison." Pet'r's Br. at 15.

The OCCA agreed that Petitioner received inaccurate information, as alleged, regarding the punishment ranges for these three offenses. OCCA Summ. Op. Denying Cert. at 8-9 & nn.2-3. Relying upon its own prior decisions, the OCCA stated that "misadvisement of the range of punishment renders a guilty plea not voluntary and subject to withdrawal, unless the misadvisement was to the defendant's benefit." *Id.* at 9 (citing *Hunter v. State*, 825 P.2d 1353, 1355 (Okla. Crim. App. 1992)). Looking to the entire plea agreement, which it found to be a "package deal," the OCCA noted that Petitioner received concurrent sentences as to multiple counts, and that this was "a benefit that Petitioner might not have received if he had ple[]d out the twelve cases at differing times." *Id.* The OCCA further determined that there was "no indication from the record that any misunderstanding Petitioner may have had about the range of punishment in three of twenty-six counts impacted the voluntariness of his guilty pleas."

*Id.* at 10. The OCCA thus concluded that "under the particular circumstances of this case, we find any error does not warrant withdrawal of the pleas." *Id.*

As noted, under AEDPA, this Court's review of the OCCA's decision is constrained to a "highly deferential" standard that, in view of Petitioner's arguments, permits relief only if "the state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Dodd*, 753 F.3d at 982 (quoting 28 U.S.C. § 2254(d)(1)). That is, regardless of whether this Court may disagree with the OCCA's decision, that decision must be left undisturbed unless the OCCA acted contrary to, or unreasonably applied, a holding of the Supreme Court that existed when the OCCA decided Petitioner's appeal. *See id.*; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("An *unreasonable* application of federal law is different from an *incorrect* application of federal law." (internal quotation marks omitted)).

Petitioner suggests that the OCCA was required to find due process violations in the instances when Petitioner entered guilty pleas based upon information that overstated the *maximum* punishment as to attempted second-degree burglary and attempted first-degree rape, and overstated the *minimum* punishment as to forcible sodomy. To this end, Petitioner cites *Brady v. United States*, 397 U.S. 742, 747-49 (1970), which, along with other Supreme Court cases, including *Boykin v. Alabama*, 395 U.S. 238 (1969), establishes federal due process principles relevant to Petitioner's case. *See* Pet'r's Br. at 17.

*Brady* and *Boykin* generally require that a constitutionally valid guilty plea be "voluntary" and "intelligent." *See Brady*, 397 U.S. at 747-48; *Boykin*, 395 U.S at 244; Pet'r's Br. at 12; OCCA Summ. Op. Denying Cert. at 7.[3] When entering a guilty plea, a criminal defendant waives certain constitutional rights, including "the privilege against compulsory self-incrimination," "the right to trial by jury," and "the right to confront one's accusers." *Boykin*, 395 U.S. at 243. For the waiver and, in turn, the plea itself to be intelligent, the defendant must have "sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748; *cf. Boykin*, 395 U.S. at 243-44 (stating that courts receiving guilty pleas should "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence").[4]

---

[3] The terms "voluntary" and "intelligent" (or "knowing") are often used loosely and interchangeably in addressing the validity of a guilty plea. *See Bousley v. United States*, 523 U.S. 614, 632-33 (1998) (Scalia, J., dissenting). For the purpose of reviewing the OCCA's decision, however, it is useful to distinguish between them and to clarify that the relevant issue in this Section does not involve voluntariness in its typical sense of freedom from coercion or other attempts to manipulate a person's free choice. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973); *Brady*, 397 U.S. at 750. Although Petitioner generally alleges that his pleas were not voluntary, he does not contend that he was *deliberately* misinformed of the punishment ranges for the three cited offenses, and the record suggests that the misinformation was the result of a mutual mistake by counsel and ultimately the trial court. Rather, Petitioner's claim is that his pleas were not intelligently made due to the misinformation about the potential punishments he would face if proceeding to trial.

[4] *Brady* considered whether a 28 U.S.C. § 2255 petitioner's guilty plea was voluntary and intelligent in light of a subsequent invalidation of the application of the statutory maximum penalty—a death sentence—that the criminal defendant could have faced if he proceeded to a jury trial. *Brady*, 397 U.S. at 743-48. Relying largely on the fact that the criminal defendant had received information regarding the penalties he faced that was

Brady and Boykin clearly establish federal law, for purposes of § 2254(d)(1), that a guilty plea must be intelligent and is not so if a criminal defendant was not accurately informed about the "direct consequences" of the plea. *See Brady*, 397 U.S. at 748, 755; *Boykin*, 395 U.S. at 242-44. Federal Courts of Appeal consistently apply these principles to mean that a defendant must be informed of the maximum (and in some instances the minimum) possible punishment to which he or she would be exposed upon entering a plea of guilty. *See Jamison v. Klem*, 544 F.3d 266, 272-74 (3d Cir. 2008) (holding that federal habeas petition should be granted where state court unreasonably applied *Brady* and *Boykin* when it affirmed a conviction despite the failure to advise criminal defendant of mandatory minimum sentence, causing the subsequent guilty plea to be less than "knowing, voluntary, and intelligent"); *Dalton v. Battaglia*, 402 F.3d 729, 733-34 (7th

---

accurate at the time the information was provided, the Supreme Court determined that his plea was both voluntary and intelligent. *Id.* at 757-58. As to voluntariness, the Court rejected the defendant's argument that the existence of a then-applicable statute permitting him to avoid the death penalty by pleading guilty had impermissibly coerced him into entering his plea. *Id.* at 749-55. The Court expressly declined to hold that a guilty plea is involuntary "whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.* at 751. The Court also rejected the criminal defendant's argument that his guilty plea was not intelligent. *Id.* at 756-58. In addressing this issue, the Court was faced with a defendant who—like Petitioner here—had been incorrectly advised regarding the maximum punishment possible, but—unlike here—the overstatement was due to a subsequent decision in another case that the statute establishing that maximum (the death penalty) was unconstitutional. *Id.* at 744-46; *see also United States v. Jackson*, 390 U.S. 570 (1968). The Court held that the defendant's misapprehension of the "likely penalties"—i.e., the defendant's failure to anticipate the later invalidation of the maximum penalty associated with proceeding to trial—was insufficient to render the plea not intelligently entered. *See Brady*, 397 U.S. at 756-58.

Cir. 2005) ("Although the Supreme Court has not defined the 'direct consequences' of a guilty plea, it must have intended this term to encompass the maximum sentence for which a defendant is eligible."); *see also Worthen v. Meachum*, 842 F.2d 1179, 1182-83 (10th Cir. 1988) (pre-AEDPA decision stating, in reliance on decisions of other federal circuits, that "[a] plea is not voluntary unless the defendant knows the direct consequences of his decision, including the maximum penalty"), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991); *Clark v. Mullen*, 179 F. App'x 551, 554 (10th Cir. 2006) ("In accepting a guilty plea, a trial court must make sure that the accused has a full understanding of what the plea connotes and of its consequences, including the maximum penalty to which the accused may be exposed.").

The resulting question is whether the OCCA *unreasonably* applied that law in rejecting Petitioner's claim of error. *See* 28 U.S.C. § 2254(d)(1); *Richter*, 562 U.S. at 101; *Dodd*, 753 F.3d at 982. This question is particularly important when, as here, the clearly established federal law is stated in broad principle:

> Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.

*Richter*, 562 U.S. at 101 (citation, internal quotation marks, and brackets omitted). Upon careful consideration, the undersigned concludes that the OCCA did not unreasonably apply the clearly established law set forth above.

As an initial matter, the first of the three convictions referenced by Petitioner does not continue to present an actionable claim for relief. That is, with respect to the charge of attempted second-degree robbery, Petitioner was misadvised that the maximum punishment was ten years' imprisonment, instead of the actual maximum of five years, and in the plea agreement accepted the maximum punishment for that offense. The OCCA reduced the sentence for this offense to five years' imprisonment. Petitioner does not explain how the OCCA's action did not provide full and proper relief regarding the alleged misapprehension.

Relevant to all three convictions referenced by Petitioner, federal courts evaluating plea challenges—whether on direct appeal, 28 U.S.C. § 2255 review, or § 2254 review— have recognized limited circumstances in which imperfect punishment advice does not necessarily result in the invalidation of a guilty plea. *See United States v. Hogg*, 723 F.3d 730, 746-48 (6th Cir. 2013) (collecting cases in which trial court's failure to advise federal criminal defendant of applicable range of punishment, including in violation of Fed. R. Crim. P. 11(b), did not require invalidation of guilty plea). One such circumstance is where a criminal defendant "had notice through other sources of the correct statutory penalty range." *Id.* at 746; *accord United States v. Gray*, 581 F.3d 749, 754 (8th Cir. 2009). With respect to the charge of forcible sodomy, Petitioner was misadvised that the minimum punishment for this offense was five years' imprisonment, when in actuality there was no minimum, and in the plea agreement accepted the maximum punishment of 20 years. This misstatement regarding a minimum punishment occurred in the plea documents; at the plea hearing, however, the trial judge properly

stated the punishment range. *See* Plea & Sent'g Hr'g Tr. at 11. The provision of the correct sentencing information at the plea hearing rebuts the allegation that Petitioner misapprehended the consequences of his guilty plea. *Cf. Worthen*, 842 F.2d at 1182 (denying habeas relief where trial judge failed to expressly state the maximum punishment during the plea hearing but petitioner did not allege that he did not otherwise know the maximum sentence to which he was exposed); *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) ("[T]here is no prejudice from counsel's inaccurate sentence or parole predictions where the court cured the defect by providing the proper information.").

Another circumstance in which it has been recognized that imperfect punishment advice does not necessarily result in the invalidation of a guilty plea is where there is an "absence of any indication that the defendant would have declined the Government's plea offer if accurately informed of the correct statutory penalty range." *Hogg*, 723 F.3d at 747 (citing *United States v. Tyus*, 526 F. App'x 581, 582-83 (6th Cir. 2013) (declining on plain error review to invalidate guilty plea of federal criminal defendant who was misinformed that penalty range was 5-to-40 years, instead of the actual 0-to-20 years, because defendant had not "suggest[ed] that the sentencing ranges used by the government and the district court led him to accept a plea he otherwise would have rejected" or "claim[ed] to have pleaded guilty with the expectation of a lower sentencing range, only to be ambushed at sentencing with a greater sentence")); *Dansberry v. Pfister*, No. 11-C-8719, 2013 WL 5966974, at *7-8 (N.D. Ill. Nov. 8, 2013) (denying habeas relief under § 2254 where, although state trial court did not properly inform defendant of

mandatory consecutive sentences and mandatory minimum sentence, this error was harmless because there was no evidence that "the due process error at the change-of-plea hearing" had "a substantial and injurious effect or influence on [the defendant's] decision to plead guilty").

In examining this issue, it is important to consider the nature of the misinformation alleged by Petitioner. Petitioner's plea agreement encompassed 26 felony charges and included specific sentences for each of the charges. Plea & Sent'g Hr'g Tr. at 8-12. The trial court advised Petitioner that while the agreed sentences for his charges were recommendations, Petitioner would be allowed to withdraw his guilty pleas if the court deviated from the agreed sentences. Plea & Sent'g Hr'g Tr. at 8. In imposing judgment, the trial court adhered to the exact sentences agreed to by Petitioner in the plea negotiations. Plea & Sent'g Hr'g Tr. at 28-39. As was the case with the two convictions discussed above, Petitioner alleges that with respect to the third charge—attempted first-degree rape, for which he agreed to serve 20 years—he was misinformed of the statutory punishment range; specifically, that he was misinformed that the stated maximum punishment was life imprisonment rather than the actual maximum punishment of 22.5 years. Pet'r's Br. at 15; Plea & Sent'g Hr'g Tr. at 11, 35. Petitioner does not allege that for any of the three challenged convictions he received a punishment different than the specific term agreed to in the plea agreement. *See* Pet'r's Br. at 15. Thus, at issue here is not misinformation regarding the potential punishments to which Petitioner would be exposed as a result of Petitioner's *pleas* but misinformation regarding the statutory range of punishment that would apply *if instead* Petitioner had proceeded to trial and was

convicted. In other words, while relevant to the evaluation of the plea agreement, the information provided to Petitioner about the statutory ranges of punishment for the charged offenses did not constitute—in light of the trial court's express advice that Petitioner could withdraw his guilty pleas if a sentence deviated from the agreed term—a direct consequence of any plea.

The *degree* of relevance of such information is further undermined by the circumstances at issue here. Petitioner was advised, pursuant to the plea agreement, that if he proceeded to trial and was convicted on all charges that he would face a maximum of nine life sentences plus additional terms totaling 190 years. *See* Doc. No. 18-10 at 3; Doc. No. 18-11 at 3; Doc. No. 18-12 at 3; Doc. No. 18-13 at 3; Doc. No. 18-14 at 3; Doc. No. 18-15 at 3; Doc. No. 18-16 at 3; Doc. No. 18-17 at 3; Doc. No. 18-18 at 3; Doc. No. 18-19 at 3; Doc. No. 18-20 at 3; Doc. No. 18-21 at 3; *see also* Plea & Sent'g Hr'g Tr. at 10-13. If the maximum penalty had not been overstated as to attempted second-degree robbery and attempted first-degree rape (the former of which was subsequently addressed by the OCCA), the correct advisement to Petitioner would have been that he would face a maximum of eight life sentences plus additional terms totaling 207.5 years. Under either scenario, the multiple life and term-of-years sentences would be eligible to run consecutively, meaning that both scenarios carried the same actual and direct consequence for Petitioner: imprisonment for the remainder of his life.

Moreover, during his plea withdrawal hearing, Petitioner reaffirmed his guilt as to two counts of first-degree robbery with a weapon, one count of sexual battery, at least one count of possession of a firearm after previous adjudication, and one count of

possession of marijuana with intent to distribute.  *See* Plea Withdrawal Hr'g Tr. at 13-14, 16, 19-21, 29, 32.  The punishment for those counts alone would have been a maximum of three life sentences plus two 10-year terms, all to be served consecutively.  *See* Doc. No. 18-11 at 3; Doc. No. 18-18 at 3; Doc. No. 18-21 at 3.  Thus, whether he pled guilty or went to trial, Petitioner was aware that the direct, likely consequences of his convictions was that he would serve the remainder of his natural life in prison.

Within this context, one can reasonably conclude that the difference in the perceived and actual statutory penalties was immaterial to Petitioner's decision to accept the plea agreement and enter guilty pleas resulting in a total sentence of six concurrent life sentences to be followed consecutively by concurrent sentences for various terms of years, the longest of which was 35 years.  Consistent with this analysis, although Petitioner sought in the state courts to withdraw his guilty pleas, he does not contend—as to any of the three referenced convictions, or the combination of them—that he would have rejected the overall plea deal if given completely accurate penalty information.  *Cf. Clark*, 179 F. App'x at 554-55 (describing as "specious" the assertion of habeas petitioner that he would not have pled guilty if provided complete information regarding punishment ranges for certain offenses within multi-count sentencing because, among other reasons, petitioner's conduct "suggest[ed] awareness of [the possibility of] a substantial amount of prison time").

In its decision, the OCCA correctly identified the governing legal principles, i.e., that a guilty plea must be voluntary and intelligent.  OCCA Summ. Op. Denying Cert. at 7, 9-10.  Guided by such principles in its plain error review, the OCCA concluded that,

because Petitioner failed to show that the inaccurate penalty information had affected his decision to plead guilty, withdrawal of the guilty plea was not required. *See* OCCA Summ. Op. Denying Cert. at 7, 9-10 (finding there was "no indication from the record that any misunderstanding Petitioner may have had about the range of punishment in three of twenty-six counts impacted the voluntariness of his guilty pleas"). The OCCA determined that "under the particular circumstances of this case, we find any error does not warrant withdrawal of the pleas." *Id.* at 9.

Even if this Court might reach a different conclusion on independent review, Petitioner fails to show that the OCCA's conclusion—that Petitioner had not proven, as required under its standard for plain error, that with the correct punishment range information Petitioner would have altered his decision to accept the plea agreement and to enter guilty pleas to all 26 counts—"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 562 U.S. at 103. Pursuant to 28 U.S.C. § 2254(d)(1), Petitioner has not shown that he is entitled to federal habeas relief on Ground Two and, accordingly, such relief should be denied.[5]

_____

[5] Petitioner also cites *Hicks v. Oklahoma*, 447 U.S. 343, 345-47 (1980), in support of his contention that that a due process violation occurs when a criminal defendant pleads guilty without having received the correct sentencing range information. *See* Pet'r's Br. at 12-13. *Hicks* is inapposite because it does not address due process considerations in the context of a guilty plea—i.e., whether a plea was voluntarily and intelligently entered. Rather, *Hicks* addresses circumstances in which a criminal defendant, who was convicted by a jury, was denied the opportunity to have his mandatory sentence set aside after the

3. <u>Ground Three</u>

In Ground Three, Petitioner contends that his convictions in Case No. CF-09-531 for both indecent exposure and forcible sodomy (counts 2 and 3) violated prohibitions under federal and state law against double jeopardy and double punishment. Pet. at 7; Pet'r's Br. at 3, 18-22 (citing U.S. Const. amends. V, XIV; Okla. Const. art. II, § 21; Okla. Stat. tit. 21, § 11(A); *id.* tit. 22, § 522). Petitioner asserts that the two charges resulted from events that "occurred in a short span of time during one episode involving a single victim." Pet'r's Br. at 18 (citing Prelim. Hr'g Tr., No. CF-09-531, Doc. No. 20, at 11-14). "There was no separation of time between the act of the indecent exposure and forcible sodomy. The indecent exposure and sodomy were part of one continuous act." *Id.* Specifically, Petitioner asserts, without citation to the record, that "[t]he State based its allegation of indecent exposure on the allegation that the Petitioner's penis was exposed to the alleged victim's view during the commission of the sodomy." *Id.* at 21-22.

The OCCA found no reversible error:

[W]e find Petitioner's convictions for Indecent Exposure and Forcible Sodomy in CF-09-531 do not violate the pro[hibi]tions against double jeopardy and double punishment under Article II, § 21, of the Oklahoma Constitution and 21 O.S. 2001, § 11 and the Fifth Amendment of the United States Constitution. While the crimes involved the same victim, the evidence shows two separate and distinct crimes were committed for which Petitioner may be legally prosecuted and convicted. *See* 21 O.S. 2001, §

---

OCCA held that the statute mandating the sentence was unconstitutional. *See Hicks*, 447 U.S. 344-47.

11.  *See also Head v. State*, 2006 OK CR 44 ¶¶, 1& 15, 146 P.3d 1141, 1144-46; *Jones v. State*, 2006 OK CR 5, ¶¶ 63 & 66, 128 P.3d 521,542-43.

OCCA Summ. Op. Denying Cert. at 10.

A criminal defendant who pleads guilty waives certain constitutional claims, and thereafter may not collaterally attack the conviction, including through a federal habeas petition, on the basis of those waived claims.  In *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), the Supreme Court discussed the "break in the chain of events" in the criminal process that occurs upon the entry of a guilty plea:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [applicable] standards.

*Tollett*, 411 U.S. at 267 (reversing grant of habeas petition and remanding for further consideration).  The purpose of the waiver rule was later discussed in *United States v. Broce*, 488 U.S. 563, 571 (1989):

> A guilty plea "is more than a confession which admits that the accused did various acts."  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  It is an "admission that he committed the crime charged against him."  *North Carolina v. Alford*, 400 U.S. 25, 32 (1970).  By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.

*Broce*, 488 U.S. at 570; *see also, e.g.*, *Ex parte Wright*, 119 P.2d 97, 97 (Okla. Crim. App. 1941) ("Where one enters a plea of guilty it will be conclusive proof of his guilt of the offense as alleged in the information.").

For purposes of this Court's review, the initial question is whether Petitioner waived his double jeopardy claim by pleading guilty to each of the two referenced charges. The Fifth Amendment's Double Jeopardy Clause protects against "successive prosecutions for the same offense and multiple punishments for a single offense." *See Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995) (citing *United States v. Dixon*, 509 U.S. 688, 695-96 (1993)). The waiver of constitutional claims occasioned by a guilty plea applies to double jeopardy violations but with a limited exception for ones that may be *facially* determined. "'[A] defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he has committed two separate crimes,' and is consequently barred from later challenging his multiple conviction on double jeopardy grounds." *Thomas*, 44 F.3d at 888 (quoting *Broce*, 488 U.S. at 570)); *Broce*, 488 U.S. at 575-76 (noting that guilty plea forfeits opportunity to challenge prosecution's theory or to establish through trial that only single crime was committed); *see also id.* at 573-74 (noting that "conscious waiver" of potential defenses such as double jeopardy is not required for valid guilty plea). Such a criminal defendant does not waive, and thus subsequently may attack, "a double jeopardy violation [that] is apparent on the face of the indictment and/or the record existing at the time the plea was entered." *Broce*, 488 U.S. at 569. Thus, in *Thomas*, the Tenth Circuit directed relief as to one double jeopardy claim by a federal habeas petitioner because "the charging information and state record establish as a matter of law the unitary nature of the offense prosecuted" but affirmed the denial of habeas relief as to a second double jeopardy claim because "the information and record do not conclusively determine a single offense but, rather, raise at most a question

of fact that might have been resolved in petitioner's favor if he had disputed the matter at trial." *Thomas*, 44 F.3d at 889.

Here, the record reflects that Petitioner's guilty pleas that resulted in convictions for indecent exposure and forcible sodomy were in all relevant respects entered voluntarily and intelligently after the advice of counsel. *See* Tr. of Plea and Sentencing, Doc. No. 18-3, at 8-27. Further, as suggested by the OCCA's Summary Opinion affirming Petitioner's conviction on both of these counts, Petitioner has not established that either the charging document or the record before the trial court when the guilty plea was entered reflects a double jeopardy violation on its face.

In comparing the elements of the two offenses, indecent exposure is not necessarily a lesser included offense of forcible sodomy. *See Stohler v. State*, 751 P.2d 1087, 1091 (Okla. Crim. App. 1988) ("If each offense requires proof of some fact or element which the other does not require, then the offenses are separate."). Under Oklahoma law, indecent exposure involves a willful, knowing, and lewd exposure of one's "person or genitals in any public place, or in any place where there are present other persons to be offended or annoyed thereby." Okla. Stat. tit. 21, § 1021(A)(1); *see also, e.g.*, *Davison v. State*, 281 P.2d 196 (Okla. Crim. App. 1955) (affirming indecent exposure conviction of defendant who masturbated in view of one or more neighbors); Okla. Unif. Crim. Jury Instr. No. 4-131 (2d ed. 1996 & Supps.). Forcible sodomy generally involves nonconsensual sexual penetration. *See* Okla. Stat. tit. 21, §§ 886-888; Okla. Unif. Crim. Jury Instr. No. 4-128. Thus, there are distinct legal elements for each of these offenses.

At the preliminary hearing in Case No. CF-09-531, the victim testified that, among other things, Petitioner masturbated in the victim's presence both before and after forcing his penis into the victim's mouth. Prelim. Hr'g Tr., No. CF-09-531, at 11-14; *see also id.* at 3 (reflecting that Petitioner and his counsel were present at hearing). In the charging document, from which Petitioner's attorney read aloud during Petitioner's plea hearing, Petitioner was alleged to have committed indecent exposure when he "willfully, knowingly, and lewdly expos[ed] his genitals" and to have committed forcible sodomy "by engaging in the penetration of the mouth of [the victim] by the penis of [Petitioner], by the use of threats and force." *See* Am. Information, O.R. No. CF-09-531 at 6, Doc. No. 23; Plea & Sent'g Hr'g Tr. at 18, 24-25; *see also* Pet'r's Br. at 24, 25, 39; Plea of Guilty, No. CF-09-531, Doc. No. 18-16, at 5. Neither the preliminary hearing transcript nor the information set forth in the charging document supports Petitioner's suggestion that the State's allegation of indecent exposure was based exclusively upon the exposure of Petitioner's penis "to the alleged victim's view during the commission of the sodomy," *see* Pet'r's Br. at 21-22. Instead, the two charges—indecent exposure and forcible sodomy—involved "facial allegations of distinct offenses," and Petitioner conceded through his guilty pleas that he "committed two separate crimes." *See Broce*, 488 U.S. at 570.

In sum, Petitioner has not conclusively demonstrated that either the charging document or the record before the trial court when his guilty plea was entered reflected a double jeopardy violation on its face. Rather, Petitioner "raise[s] at most a question of fact that might have been resolved in [P]etitioner's favor if he had disputed the matter at a

trial." *Thomas*, 44 F.3d at 889; *see also Broce*, 488 U.S. at 571. Having failed to establish that the circumstances in his case fall within an exception to the waiver rule, Petitioner is prohibited from bringing his federal claims in Ground Three to collaterally attack the referenced pleas and convictions. Further, Petitioner has not shown that the OCCA's rejection of his federal claim "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(1), (2). Thus, Petitioner is not entitled to federal habeas relief on Ground Three.

   4. <u>Ground Four</u>

   In Ground Four, Petitioner asserts that "no sufficient factual basis was presented to the court to support Petitioner's guilty pleas and convictions in [Case Nos.] CF-09-534 and CF-09-535." Pet. at 7; Pet'r's Br. at 23-27. Petitioner alternatively asserts that "double jeopardy would bar [P]etitioner's convictions in [Case Nos.] CF-09-534 and CF-09-535." Pet. at 7; Pet'r's' Br. at 23, 27-28. Petitioner contends that, for either of those reasons, he should be permitted to withdraw his guilty pleas. *See* Pet'r's Br. at 28.

   As to the claim of insufficient factual basis, Petitioner alleges that his statements were insufficient at the plea hearing and in the plea documents in Case Nos. CF-09-534 and CF-09-535. Pet'r's Br. at 24-26. At the plea hearing, Petitioner's counsel read into the record portions of the charging documents in each case, including the State's factual allegations in support of each alleged crime. Pet'r's Br. at 24-25; Plea & Sent'g Hr'g Tr. at 18, 23, 26. Generally responding only "Yes" or "Yeah" to questions from his counsel,

Petitioner acknowledged the veracity of the State's factual allegations. Pet'r's Br. at 24-25; Plea & Sent'g Hr'g Tr. at 18, 23, 26. Petitioner asserts, however, that because his statements did not describe "in his own words what he did to be guilty," the statements are insufficient to support Petitioner's guilty pleas and convictions. Pet'r's Br. at 24.

The plea documents in Case Nos. CF-09-534 and CF-09-535, rather than providing the State's factual allegations from the respective charging documents in those cases, mistakenly include the same recitation of facts as that provided in support of Case No. CF-09-533. That is, the guilty plea entered in each of the three cases states as the factual basis for the plea: "On NOVEMBER 1st, 2009, in Comanche County, I robbed P.S. and G.W. by threatening them with a handgun and taking from them cash, and X-box gaming console and several games." Plea of Guilty, No. CF-09-533, Doc. No. 18-18, at 5; Plea of Guilty, No. CF-09-534, Doc. No. 18-19, at 5; Plea of Guilty, No. CF-09-535, Doc. No. 18-20, at 5. Petitioner thus contends that the record lacks sufficient assurance that Petitioner "committed the crimes charged, or that he intended to plead guilty to the two, separate offenses charged in CF-09-534 and CF-09-535." Pet'r's Br. at 27.

As to the alternative double-jeopardy claim, Petitioner asserts that because the plea documents in Case Nos. CF-09-533, CF-09-534, and CF-09-535 each reflect the same factual basis, Petitioner's convictions in Case Nos. CF-09-534 and CF-09-535 must be construed as convictions for the same offense as in Case No. CF-09-533, violating Petitioner's protections under the Double Jeopardy Clause. Pet'r's Br. at 27-28.

The OCCA denied these claims on the merits, concluding:

[W]e find any error in the factual basis set out in the Summary of Facts forms in CF-09-534 and CF-09-535 to be scrivener's errors not warranting withdrawal of the pleas. This Court must look to the entire record to determine if the judgment and sentence rendered on a plea of guilty should be disturbed. The entire record, when considering a plea of guilty, includes all pleadings and proceedings in the case. *See Cox v. State,* 2006 OK CR 51, ¶ 28, 152 P.3d 244, 254; *Ocampo v. State,* 1989 OK CR 38, ¶ 8, 778 P.2d 920, 923. The record in both CF-09-534 and 535 reflect[s] a sufficient factual basis was established for each plea so that we can say the pleas were entered knowingly and voluntarily. *See Hagar v. State,* 1999 OK CR 35, ¶ 4, 990 P.2d 894, 896-897. Contrary to Petitioner's argument, double jeopardy does not prohibit his convictions in CF-09-534 and 535 as they are clearly not based on the same factual basis as CF-09-533.

OCCA Summ. Op. Denying Cert. at 10-11.

"[U]nless a defendant claims factual innocence while pleading guilty, there is no federal constitutional requirement for the [state] district court to ascertain a factual basis for the plea." *Perkis v. Sirmons*, 201 F. App'x 648, 650 (10th Cir. 2006) (citing *Berget v. Gibson*, No. 98-6381, 1999 WL 586986 (10th Cir. Aug. 5, 1999); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971)); *see also Alford*, 400 U.S. at 38 n.10; *Sena v. Romero*, 617 F.2d 579, 581 (10th Cir. 1980). The error in which the factual basis for CF-09-533 was also inserted in the plea documents for CF-09-534 and CF-09-535 was not repeated during the plea colloquy, as Petitioner's plea counsel then read from the charging documents, which presented the State's separate factual allegations as to each charge. *See* Plea & Sent'g Hr'g Tr. at 18, 23, 26. Petitioner did not claim factual innocence while pleading guilty to the charges in Case Nos. CF-09-533, CF-09-534, and CF-09-535. Instead, Petitioner admitted in open court that the State's separate factual allegations as to each charge against him were correct and admitted his guilt as charged in each case. *See* Plea & Sent'g Hr'g Tr. at 18, 23, 26. Petitioner's insufficient-factual-basis claims in

Ground Four are "not redressable under 28 U.S.C. § 2254," *see Berget*, 1999 WL 586986, at *5, and, accordingly, Petitioner is not entitled to federal habeas relief as to those claims.[6] *See* 28 U.S.C. § 2254(d)(1).

Further, as to Petitioner's double jeopardy claim in Ground Four, neither the charging documents nor the record before the state district court at the time of Petitioner's pleas in Case Nos. CF-09-533, CF-09-534, and CF-09-535 facially reflects a double jeopardy violation. Information, O.R. No. CF-09-533 at 1, Doc. No. 23; Information, O.R. CF-09-534 at 1, Doc. No. 23; Am. Information, O.R. No. CF-09-535 at 6, Doc. No. 23. Accordingly, Petitioner relinquished any double jeopardy claims upon entering his pleas of guilty in those cases. *See Thomas*, 44 F.3d at 889. Petitioner is not entitled to federal habeas relief as to his double-jeopardy claim in Ground Four. *See* 28 U.S.C. § 2254(d)(1).

5. <u>Ground Five</u>

In Ground Five of Petitioner's Brief to the OCCA, Petitioner contended that the Judgment and Sentence filed in Case No. CF-09-533 did not reflect the oral pronouncement of that sentence—specifically, that the sentence was to be served concurrently with the sentences in Case Nos. CF-09-501, CF-09-502, CF-09-503, CF-09-

---

[6] In his brief, Petitioner attempts to invoke the requirements of Federal Rule of Criminal Procedure 11(b), which sets forth the requirements for a federal district court's consideration and acceptance of a defendant's guilty or *nolo contendere* plea. *See* Pet'r's Br. at 26; Fed. R. Crim. P. 11(b). These rule provisions, which are at least in part designed to avoid any possibility of a constitutional challenge to a guilty or *nolo contendere* plea, do not apply to state-court proceedings. *See Halliday v. United States*, 394 U.S. 831, 832 (1969); *McCarthy v. United States*, 394 U.S. 459, 460, 465 (1969).

504, and CF-09-534. Pet'r's OCCA Br. at 38-40. Petitioner requested that the OCCA direct the state district court to correct this scrivener's error. *See id.* The OCCA granted the requested relief. OCCA Summ. Op. Denying Cert. at 11, 15. Without reference to the OCCA's disposition, Petitioner reurges this exact claim in Ground Five of his Petition, presenting no new argument. *See* Pet. at 5; Pet'r's Br. at 28-30.

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). The relief requested by Petitioner on this claim has been granted to him. Absent an injury traceable to Respondent and capable of being redressed by a judicial decision, Petitioner's claim must be dismissed for lack of a justiciable controversy. *See id.*; *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction[.]"); *cf. Hayes v. Evans*, 70 F.3d 85, 86 (10th Cir. 1995) (directing district court to dismiss, rather than deny, habeas petition as moot when intervening state-court decision reversed underlying conviction and granted new trial).

6. Ground Six

In Ground Six, Petitioner cites only Oklahoma law to assert that his "statutory and constitutional rights to preliminary hearings and timely post-[examination] competency hearings were violated in [Case Nos.] CF-09-530, CF-09-534, CF-09-535, and CF-09-536." *See* Pet. at 5; Pet'r's Br. at 30-33. Petitioner references the state district court docket sheets to assert that "preliminary hearing waivers were filed shortly after the criminal proceedings had been suspended against Petitioner for competency reasons."

Pet'r's Br. at 32. Petitioner acknowledges that he later stipulated to his competency but contends that the trial court nevertheless erred by proceeding on certain matters despite the suspension allegedly required under state law while his competency was being determined; specifically, he contends that the suspension deprived that court of "authority to resume the criminal proceedings and either hold or waive Petitioner's preliminary hearings in CF-09-530, CF-09-534, CF-09-535, and CF-09-536." *See* Pet'r's Br. at 32-33.

The OCCA denied relief on this ground, concluding:

> [W]e find Petitioner has misread the court records as the docket and pleadings themselves show that in CF-09-530, 534, 535, and 536, the trial court held the Preliminary Hearings or accepted waivers of such prior to Petitioner's filing of an Application for Competency Evaluation and the suspension of criminal proceedings pending a competency evaluation. However, the records also reflect that the trial court erred in failing to hold the post-examination competency hearing prior to resuming the criminal proceedings. This error was harmless though as Petitioner subsequently stipulated to the report of the mental health expert finding him competent. *See Tate v. State*, [896 P.2d 1182, 1186 (Okla. Crim. App. 1995)] (the failure to conduct a competency hearing concurrently with the trial is not per se violative of due process "if a defendant's competency at the time of trial can be meaningfully determined at a subsequent time on the basis of credible and competent evidence, then error committed by a district court in failing to hold a hearing at the proper time can be cured[,"] citing *Boltz v. State*, [806 P.2d 1117, 1121 (Okla. Crim. App. 1991)]).

OCCA Summ. Op. Denying Cert. at 11-12 (citations omitted).

As noted above, a criminal defendant who pleads guilty waives certain constitutional claims and may not subsequently collaterally attack a conviction that stemmed from that plea on the basis of the waived claims. *See supra* Section B.6; *Tollett*, 411 U.S. at 267; *Thomas*, 44 F.3d at 889. The errors alleged in Ground Six occurred

prior to the entry of Petitioner's guilty pleas. Petitioner has not shown and the undersigned does not observe that Petitioner's claims fit within any exception to the general prohibition against collateral attack. *See United States v. Doe*, 698 F.3d 1284, 1289-91 (10th Cir. 2012) (discussing, in direct appeal of federal district court decision, waiver rule's general applicability and recognized exceptions). Having waived such claims upon pleading guilty, Petitioner is precluded from seeking federal habeas relief as to his claims in Ground Six.

Moreover, Petitioner's argument is purely one of state procedural law. Petitioner does not contend that he was not competent during the relevant period. *See* Pet'r's Br. at 30-33. Rather, Petitioner contends that, as a matter of procedure under the Oklahoma Constitution and statutes, it was improper for the trial court to hold a preliminary hearing, or accept a waiver of preliminary hearing, during the time period between Petitioner's application for a competency evaluation and the final competency hearing. *See* Pet'r's Br. at 31 (describing claim as based on "procedural issue"). Generally, an alleged state-law error is not redressable by way of a federal habeas petition. *See Estelle*, 502 U.S. at 67-68. Petitioner has not shown that the OCCA's finding—that the cited preliminary hearings and waivers of preliminary hearings *preceded* Petitioner's application for competency evaluation—was an unreasonable determination of the facts. *See* OCCA Summ. Op. Denying Cert. at 11-12; 28 U.S.C. § 2254(d)(2). Nor has Petitioner shown, given the undisputed fact of his actual competency and his subsequent guilty pleas, that the cited procedural errors denied him "the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration and internal

quotation marks omitted); *cf. Powers v. Dinwiddie*, 324 F. App'x 702, 704-05 (10th Cir. 2009) (denying habeas claim based on alleged insufficiency of evidence at preliminary hearing because petitioner was ultimately convicted).

Accordingly, Petitioner has not shown that he is entitled to federal habeas relief on Ground Six, and such relief should be denied.

7.  <u>Ground Seven</u>

In Ground Seven, Petitioner contends that his guilty pleas "were entered without sufficient deliberation and were not knowingly and voluntarily entered" because the "pleas were the result of Petitioner's confusion and misunderstanding as to the potential punishment in some of these charges, his failure to fully grasp the consequences of his pleas, and his frustration because of threats and coercion from his own attorney." Pet. at 5; Pet'r's Br. at 34-43.

In his brief, Petitioner first reiterates his arguments regarding incorrect punishment range information and also emphasizes that the guilty pleas were not written by Petitioner or entered in his own words. Pet'r's Br. at 35-37. Petitioner then presents allegations regarding his plea counsel's conduct, which was the focus of Petitioner's motion to withdraw his guilty pleas in the trial court. *See* Pet'r's Br. at 37, 39; Pet'r's Mot. to Withdraw Guilty Plea.

As an initial matter, Petitioner does not expressly argue, in this ground or elsewhere, that his plea counsel's assistance was ineffective. Relying exclusively upon his own testimony at the first plea withdrawal hearing, Petitioner generally alleges that his plea counsel: may not have fully investigated defenses to certain charges; did not

34

review certain alleged evidence with Petitioner; did not provide copies of documents to Petitioner; and advised Petitioner that, "if [Petitioner] went to trial, he would get 10 life sentences and 600 years." *See* Pet'r's Br. at 37 (citing Plea Withdrawal Hr'g Tr. at 4-8).[7] Petitioner states he "told the judge he was guilty even though he was not guilty because he did not want to go to trial with *the lawyer he had*," a privately retained attorney. *See* Pet'r's Br. at 37 (citing Plea Withdrawal Hr'g Tr. at 12), 6. Petitioner suggests that his participation in the plea process was not significant, asserting that he "just signed" prefilled guilty plea documents, which "he did not read," and that "all he did was agree to what his lawyer said" at the plea hearing. Pet'r's Br. at 38-39 (citing Plea Withdrawal Hr'g Tr. at 27-28, 33). *But see, e.g.*, Pet'r's Br. at 7, 25 (asserting that Petitioner cannot read); Plea of Guilty, No. CF-09-501, Doc. No. 18-10, at 2, 12 (reflecting that Petitioner was unable to read guilty plea document but was "able to understand the English language" and that Petitioner's plea counsel attested that he "read and fully explained to [Petitioner] the allegations contained in the Information in this case").

Petitioner contends that his testimony at the first plea withdrawal hearing demonstrates that he "felt forced by his attorney to plead guilty to all 12 . . . cases." *See* Pet'r's Br. at 40. Petitioner then cites multiple cases that address the issue of attorney coercion in the guilty plea context, describing various coercive circumstances that have

---

[7] At times, Petitioner's summary in his brief of his testimony at the first plea withdrawal hearing does not accurately reflect the context and content of his statements at that hearing.

been found to or were speculated to cause an involuntary guilty plea.  *See* Pet'r's Br. at

40-42.

Petitioner specifically contends that his circumstances—i.e., when his plea counsel

"told Petitioner he would get 10 life sentences and 600 years"—"were similar" to two

cases in which guilty pleas were determined to be involuntary based upon "threats" from

the criminal defendant's attorney.  In one case, an attorney allegedly threatened to

withdraw from representing the defendant unless a guilty plea was entered.  In the other

case, an attorney allegedly informed the defendant that, unless he entered a guilty plea,

"he [would] get a 'Ku Klux' jury and the 'chair.'"  Pl.'s Br. at 40-42.

Without specific factual support, Petitioner also asserts that he was "threatened

by" his plea counsel "much like" the criminal defendant in *United States v. Estrada*, 849

F.2d 1304 (10th Cir. 1988), who alleged that his guilty plea was involuntary: "Estrada

was repeatedly warned by his attorney . . . that if he did not plead guilty, he would get a

massive sentence. . . . His attorney advised him that he had gone to a lot of trouble to

arrange the plea agreement, and if he backed out, things would go badly for him."  Pet'r's

Br. at 41-42 (citation omitted) (emphasis added) (citing *Estrada*, 849 F.2d at 1305-06).

Finally, Petitioner cites *Boykin*, discussed above, for the general proposition that a

constitutionally valid guilty plea must be both voluntary and intelligent and that

"'coercion, terror, inducements, subtle or blatant threats . . . might be a perfect cover-up

of unconstitutionality' of a plea."  Pet'r's Br. at 42-43 (quoting *Boykin*, 395 U.S. at 243).

The OCCA "note[d] that the only claim of error raised in [Petitioner's] appeal

which was included in the motion to withdraw is that . . . Petitioner felt coerced by

counsel into entering the guilty pleas." OCCA Summ. Op. Denying Cert. at 6. In denying Ground Seven on the merits (rather than on plain error review), the OCCA stated:

> We find the record does not support Petitioner's claim that he was coerced by counsel into pleading guilty. Despite the misadvisement as to the range of punishment in . . . three of the counts, and some confusion over the factual basis in a couple of cases, the plea hearing, when considered in its entirety, indicates knowing and voluntary pleas were entered. At the plea hearing, Petitioner repeatedly stated he was able to effectively communicate with counsel, that he had plenty of time to discuss the matter with counsel, and that he did not feel coerced, forced, or threatened by anyone into entering the guilty pleas. Petitioner informed the court he was pleading guilty because he was guilty and because he committed the acts alleged by the State. Petitioner admitted to going over the Summary of Facts forms with counsel, that all of his answers were truthful and that he signed all of the forms.

OCCA Summ. Op. Denying Cert. at 12; *see also* Plea & Sent'g Hr'g Tr. at 3-5, 8-10, 13, 14, 17-18, 26-27. The OCCA further noted:

> [T]he withdrawal hearing was continued for over two weeks in which time defense counsel could have contacted any witnesses Petitioner claims could have proved his innocence. No names or witnesses were produced at the resumption of the hearing or now on appeal. Accordingly, we find nothing in the record to support Petitioner's claims of coercion.

OCCA Summ. Op. Denying Cert. at 12-13.

To the extent that Petitioner's allegations relate to whether his guilty pleas were intelligently entered, those claims have been addressed elsewhere in this Report and Recommendation. Petitioner's remaining allegations in Ground Seven—that his attorney coerced him into entering the pleas—relate to whether Petitioner's guilty pleas were voluntarily entered.

Petitioner presents no "clear and convincing evidence" to rebut AEDPA's presumption of correctness as to the OCCA's factual findings regarding his allegations of coercion by his counsel. Petitioner relies here, as he did before the OCCA, upon only his own testimony at the first plea withdrawal hearing. The OCCA's findings above are supported by the transcript of the plea colloquy, and Petitioner cites no evidence to the contrary. Thus, Petitioner has not established that the OCCA unreasonably erred in its factual findings as to Ground Seven. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1).

Petitioner also presents no argument that the OCCA's decision was contrary to or involved an unreasonable application of clearly established federal law. Petitioner cites only one Supreme Court case, *Boykin*, which holds that whether a guilty plea was voluntary and intelligent cannot be determined from a silent record. *See Boykin*, 395 U.S. at 242-44; Pet'r's Br. at 34-43. The OCCA's decision is consistent with *Boykin*, however, in that the state court here found that the record of the plea colloquy affirmatively showed that Petitioner's guilty pleas were voluntarily entered. *See* OCCA Summ. Op. Denying Cert. at 12-13. Further, even if—despite § 2254(d)(2) deference to the OCCA's factual finding—this Court accepted as true Petitioner's allegation that his plea attorney told Petitioner that "if [he] went to trial, he would get 10 life sentences and 600 years," Pet'r's Br. at 37, that statement would not suffice to support a determination that Petitioner's guilty plea was involuntary. "'An erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary.'" *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (quoting *Wellnitz*

*v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)); *see also McMann v. Richardson*, 397 U.S. 759, 770 (1970). Petitioner thus fails to show that the OCCA's ruling on the claims in Ground Seven misapplied clearly established federal law or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," as would be required for Petitioner to obtain federal habeas relief. *See Richter*, 562 U.S. at 103; 28 U.S.C. § 2254(d)(1).

Petitioner has not shown that he is entitled to federal habeas relief on Ground Seven under either prong of § 2254(d) and, accordingly, such relief should be denied.

### 8. Ground Eight

In Ground Eight, Petitioner contends that "under the facts and circumstances and the entire situation surrounding the pleas, Petitioner received excessive sentences in these cases." Pet. at 5; Pet'r's Br. at 44-47. Petitioner notes that he "received the maximum punishment possible in 21 of the 26 separate counts" filed against him and that Petitioner will be over age 80 before his earliest eligibility to be considered for release from prison. Pet'r's Br. at 45, 46. Petitioner concedes that some sentences were ordered to run concurrently, rather than consecutively, but asserts that "there was not much lenience or consideration given to [Petitioner] for entering into the plea 'bargain'"—i.e., that Petitioner "did not really get any benefit for this 'bargain.'" *Id.* at 46.

Aside from its modification of Petitioner's sentence as discussed in Ground One, the OCCA found no plain error and denied relief on this ground. *See* OCCA Summ. Op. Denying Cert. at 13-14. The OCCA stated: "Considering Petitioner's prior criminal history and the facts and circumstances of each case involved in this appeal, the sentences

were not so excessive as to shock the conscience of the Court." OCCA Summ. Op. Denying Cert. at 13. "Further, contrary to Petitioner's argument, the number of concurrent sentences he received is clear evidence he was given leniency and consideration for his plea bargaining," noting that, under Oklahoma law, "sentences are to run consecutively unless the trial judge, in his or her discretion, rules otherwise." OCCA Summ. Op. Denying Cert. at 14.

Sentencing is generally a matter of state law and not subject to a constitutional challenge in federal court unless the petitioner shows that the sentence exceeds statutory limits, is otherwise unauthorized under law, or is grossly disproportionate, given the crime's severity. *Ewing,* 538 U.S. at 21; *Dennis*, 222 F.3d at 1258. Here, Petitioner has made no such showing by generally conceding that the sentences are in accordance with state law but arguing that the plea bargain was not sufficiently beneficial to Petitioner.[8] "Generally, our review of a sentence [on federal habeas] ends once we determine the sentence is within the limitation set by statute." *Dennis*, 222 F.3d at 1258. Moreover, Petitioner presents no argument that the OCCA's finding of no plain error as to the length and structure of Petitioner's sentences (following the OCCA's correction of the excessive sentence discussed in Ground One) and denial of relief were contrary to or involved an unreasonable application of clearly established federal due process law. *See* 28 U.S.C. §

---

[8] Petitioner does not dispute that his sentence on Ground One, as modified by the OCCA, is now within state-law limits.

2254 (d)(1); *Thornburg v. Mullin*, 422 F.3d at 1125. Petitioner is not entitled to federal habeas relief on Ground Eight.

   9. Ground Nine

In Ground Nine, Petitioner contends that "the cumulative effect of all these errors deprived [P]etitioner of a fair and impartial proceeding." Pet. at 6; Pet'r's Br. at 47-48. Denying this claim on the merits, the OCCA stated: "[W]hile we have found several errors in this appeal, when considered singly and cumulatively, none warrant withdrawal of the guilty pleas. Most of the errors were scrivener's errors resulting from counsel's preparation and pleading of 12 cases, including twenty-six counts, at once." OCCA Summ. Op. Denying Cert. at 14. The OCCA further noted that "[t]he only relief warranted [was] the modification of the sentence in Count 1, CF-09-505," as discussed above in Ground One. *See id.*

"A cumulative error analysis aggregates all the errors that individually might be harmless, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Thornburg*, 422 F.3d at 1137 (internal quotation marks omitted) (reviewing OCCA's cumulative error decision under AEDPA by reference to *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), and *Le v. Mullin*, 311 F.3d 1002 (10th Cir. 2002)). "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868

(10th Cir. 2013) (internal quotation marks omitted). As that language implies, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors. *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). Under such review a federal court also considers the impact of any constitutional claims that "have been individually denied for insufficient prejudice" because to exclude such claims from consideration "would render the cumulative error inquiry meaningless, since it would . . . be predicated only upon individual error already requiring reversal." *See Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (alteration and internal quotation marks omitted).

The Tenth Circuit has recognized that a circuit split exists regarding whether the requirement to conduct a cumulative-error analysis is clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014); *Hancock*, 2015 WL 4910981, at *19 n.17. However, the Tenth Circuit also notes that its precedent "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See Cole*, 755 F.3d at 1177 n.14 (internal quotation marks omitted); *cf. Bland v. Sirmons*, 459 F.3d 999, 1029 (10th Cir. 2006) ("Because the OCCA concluded that the cumulative errors did not deprive [the petitioner] of a fair trial, we must defer to its ruling unless it constitutes an unreasonable application of the cumulative-error doctrine.").

Having considered *Cole*'s forecast, the undersigned concludes that the OCCA's decision on Petitioner's cumulative-error claim was not unreasonable or contrary to such

clearly established federal law.  *See Thornburg*, 422 F.3d at 1137-38; 28 U.S.C. § 2254(d)(1).  Relief on this basis should be denied.

RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Petition (Doc. No. 1) be denied, with the exception of the claims raised in Ground Five, which should be dismissed for lack of subject-matter jurisdiction.

NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by September 25, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 8th day of September, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE